**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Civil Action No. 1:23-cv-11050-MJJ ) |
| GA INVESTORS, | ) ) |
| Defendant. | ) ) |

**SECURITIES AND EXCHANGE COMMISSION'S**
**MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION**
**FOR DEFAULT JUDGMENT AGAINST GA INVESTORS**

# Contents

SUMMARY ............................................................................................................................. 1

PROCEDURAL BACKGROUND ..................................................................................... 2

ARGUMENT ......................................................................................................................... 3

    I.    The Court May Enter Final Judgment Without a Hearing. ................................... 3

    II.   The Commission's Claims Against GA Investors Are Established as a Matter of Law. .................................................................................................................... 4

   III.   GA Investors Committed Securities Fraud. ........................................................... 4

   IV.   The Court Should Enter the Proposed Final Judgment Against GA Investors...... 7

CONCLUSION ................................................................................................................... 13

## TABLE OF AUTHORITIES

**Cases**

*Aaron v. SEC*, 446 U.S. 680 (1980) ............................................................................................. 5
*Aldridge v. A.T. Cross Corp.*, 284 F.3d 72 (1st Cir. 2002) ...................................................... 5, 7
*American Library Ass'n v. Pataki*, 969 F. Supp. 160 (S.D.N.Y. 1997) ..................................... 6
*Herman & MacLean v. Huddleston*, 459 U.S. 375 (1983) ......................................................... 5
*Liu v. SEC*, 140 S. Ct. 1936 (2020)........................................................................................... 11
*Lorenzo v. SEC*, 139 S. Ct. 1094 (2019) ..................................................................................... 5
*Official Committee of Unsecured Creditors of WorldCom, Inc. v. SEC*,
  467 F.3d 73 (2d Cir. 2006) ..................................................................................................... 10
*Ramos-Falcon v. Autoridad de Energia Electrica*, 301 F.3d 1 (1st Cir. 2002) ........................... 3
*SEC v Druffner*, 517 F. Supp. 2d 502 (D. Mass. 2007), *aff'd sub nom.*
  *SEC v. Ficken*, 546 F.3d 45 (1st Cir. 2008) .................................................................. 8, 11, 12
*SEC v. Bilzerian*, 29 F.3d 689 (D.C. Cir. 1994) ......................................................................... 8
*SEC v. Carnovale, et al.*, No. 21-cv-11938-MJJ (D. Mass. Jan. 2, 2024) ................................ 10
*SEC v. Enterprises Solutions, Inc.*, 142 F. Supp. 2d 561 (S.D.N.Y. 2001) ............................... 7
*SEC v. Esposito*, 260 F. Supp. 3d 79 (D. Mass. 2017) ............................................................... 7
*SEC v. Esposito*, No. 16-cv-10960-ADB, 2018 WL 2012688 (D. Mass. Apr. 30, 2018) ......... 10
*SEC v. Feloni et al.*, No. 23-cv-12233-JEK (D. Mass.).............................................................. 10
*SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450 (2d Cir. 1996) .................................................... 12
*SEC v. Happ*, 392 F.3d 12 (1st Cir. 2004) .......................................................................... 10, 12
*SEC v. Johnston*, 986 F.3d 63 (1st Cir. 2021) ............................................................................ 7
*SEC v. Navellier & Assocs, Inc.*, No. 17-cv-11633-DJC,
  2021 WL 5072975 (D. Mass. Sept. 19, 2021) ....................................................................... 12
*SEC v. Sargent*, 329 F.3d 34 (1st Cir. 2003) ....................................................................... 8, 12
*SEC v. Sharp et al.*, No. 21-cv-11276-WGY (D. Mass.).......................................................... 10
*SEC v. Tropikgadget FZE, et al.*, No. 15-cv-10543-ADB,
  2016 WL 4555595 (D. Mass. Aug. 31, 2016) ......................................................................... 4
*Sonesta RL Hotels Franchising, Inc. v. Patel*, __ F. Supp. 3d. __,
  2024 WL 457046 (D. Mass. Feb. 6, 2024) .............................................................................. 3
*U.S. v. Lewis*, 554 F. 3d 208 (1st Cir. 2009) .............................................................................. 6

**Statutes**

15 U.S.C. § 77q(a) [Securities Act Section 17(a)]................................................................ *passim*
15 U.S.C. § 77t(b) [Securities Act Section 20(b)].................................................................*passim*
15 U.S.C. § 78c(a)(47) ................................................................................................................. 9
15 U.S.C. § 78j(b) [Exchange Act Section 10(b)] ................................................................ *passim*
15 U.S.C. § 78u(d) [Exchange Act Section 21(d)] .............................................................. *passim*

**Rules**

17 C.F.R. § 201.1001 ................................................................................................................. 11
17 C.F.R. § 240.10b-5 [Rule 10b-5] ..................................................................................... *passim*
Fed. R. Civ. P. 4 .......................................................................................................................... 3

Fed. R. Civ. P. 12(a) ................................................................................................................ 3
Fed. R. Civ. P. 55 ................................................................................................................ 1, 3

Plaintiff Securities and Exchange Commission (the "Commission") submits this memorandum of law in support of its motion, under Fed. R. Civ. P. 55(b)(2), for entry of default judgment as to Defendant GA Investors.

## SUMMARY

The Commission's Complaint alleged that GA Investors and the unknown owners and operators behind it fraudulently offered investments through dozens of websites, including GA-Investors.org. Beginning in at least March 2022, the Defendants solicited investors by impersonating legitimate companies and falsely promising exorbitant returns for investments in various securities offerings, including crypto mining projects. Through the GA-Investors.org website, related social media sites, and via smartphone messaging applications, GA Investors defrauded U.S. and foreign investors out of more than $70,000. In soliciting these investments, GA Investors made multiple material misrepresentations and omissions concerning the company's existence and operations; falsely guaranteed profits; and claimed that investments were insured. The Complaint charged GA Investors with violating the anti-fraud provisions of Section 17(a) of the Securities Act of 1933 ("Securities Act") and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), and Rule 10b-5.

On February 9, 2024, this Court entered default against GA Investors (Doc. No. 39). The Commission now asks the Court to enter default judgment:

1. Permanently enjoining GA Investors, and its agents, servants, employees, and attorneys and those persons in active concert or participation with it who receive actual notice of the injunction by personal service or otherwise, against violations of Exchange Act Section 10(b) [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5]; and Securities Act Section 17(a) [15 U.S.C. § 77q(a)], under Section 20(b) of the Securities Act 15 U.S.C. § 77t(b)] and Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)];

2. Permanently enjoining GA Investors from, directly or indirectly, including, but not limited to, through any entity owned or controlled by GA Investors, participating in

    the purchase, offer or sale of any security to investors or potential investors, provided, however, that such injunction shall not prevent GA Investors from purchasing or selling securities listed on a national securities exchange for its own personal account, under Sections 21(d)(1) and 21(d)(5) of the Exchange Act [15 U.S.C. §§ 78u(d)(1) and (5)], and Section 20(b) of the Securities Act [15 U.S.C. § 77t(b)];

3. Ordering GA Investors to pay a civil monetary penalty of $1,116,140 under Securities Act Section 20(d) [15 U.S.C. § 77t(d)] and Exchange Act Section 21(d)(3) [15 U.S.C. § 78u(d)(3)]; and

4. Ordering GA Investors to pay disgorgement of $70,058, and prejudgment interest of $5,740, under Section 21(d)(7) of the Exchange Act [15 U.S.C. § 78u(d)(7)].

## PROCEDURAL BACKGROUND

On May 11, 2023, the Commission filed its Complaint against GA Investors and the unknown operators behind it (originally captioned as the "John Doe" Defendants), alleging that they fraudulently offered securities, including crypto asset mining pools, through dozens of websites. *See* Doc No. 1. Concurrent with the Complaint, the Commission sought emergency relief through a Temporary Restraining Order ("TRO"), including an order to take down the websites that contained material misstatements about the fraudulent securities offerings. *See* Doc Nos. 2, 3. The Court granted the TRO, which included a provision allowing for service of all pleadings in this case, including the Complaint and Summons, via email, among other means. *See* Doc No. 6, at ¶IX. The Commission served the Defendants on May 12, 2023, by email at several email addresses connected to the Defendants. *See* Doc Nos. 7-11.[1]

Thereafter, through late 2023, the Commission learned of, and proceeded to take down, dozens of additional fraudulent securities offerings on other websites operated by the Defendants. *See* Doc Nos. 18-22, 27-29, 33-35.

---

[1] The Commission was not able to locate a physical address (or country of origin) for GA Investors or the unknown operators behind it. They impersonated and used the address information of legitimate US companies on the fraudulent websites. The Commission detailed its efforts to locate and contact the Defendants in Doc No. 3-2 at 15-19 and Doc No. 20 at 2.

2

Under Federal Rules of Civil Procedure 4 and 12(a), the deadline for the Defendants to answer or otherwise respond to the Complaint was June 1, 2023.

On February 2, 2024, the Commission filed a notice of dismissal as to the unknown individuals behind GA Investors (the John Doe Defendants). Doc No. 36. That same day, the Commission moved to default GA Investors based on its failure to appear in this litigation or answer the Commission's complaint. Doc. No. 37. The Clerk of Court entered default on February 9, 2024. Doc. No. 39.

Entry of default judgment against GA Investors will conclude this case.

## ARGUMENT

Based upon GA Investors' default and the allegations of the Complaint, which are deemed to be true, the Court should enter final judgment against GA Investors, enjoining it from violating the securities laws and entering a conduct-based injunction, and ordering GA Investors to pay a civil penalty, disgorgement, and prejudgment interest.

### I. The Court May Enter Final Judgment Without a Hearing.

Under Federal Rule of Civil Procedure 55, a default judgment may be entered without a hearing if "a court has jurisdiction over the subject matter and parties, the allegations in the complaint state a specific, cognizable claim for relief, and the defaulted party had fair notice of its opportunity to object." *In re The Home Restaurants, Inc.*, 285 F.3d 111, 114 (1st Cir. 2002); *see also Ramos-Falcon v. Autoridad de Energia Electrica*, 301 F.3d 1, 2 (1st Cir. 2002) (court may examine the complaint, taking all well-pleaded factual allegations as true, to determine its legal sufficiency before entering a default judgment); *Sonesta RL Hotels Franchising, Inc. v. Patel*, __ F. Supp. 3d. __, 2024 WL 457046, at *2 (D. Mass. Feb. 6, 2024) (Kobick, J.). Here, the Complaint sufficiently alleges claims for relief against GA investors, and for close to one

3

year since the filing of the case, GA Investors, alone or through its various owners and operators, has had fair notice of the lawsuit and an opportunity to object.

**II.     The Commission's Claims Against GA Investors Are Established as a Matter of Law.**

The Complaint's allegations against GA Investors must be taken as true. "Because the [] Defendants have been defaulted in this case, they are taken to have conceded the truth of the factual allegations in the complaint as establishing the grounds for liability." *SEC v. Tropikgadget FZE, et al.*, No. 15-cv-10543-ADB, 2016 WL 4555595, at *2 (D. Mass. Aug. 31, 2016) (cleaned up). Those allegations are summarized below, and amply support the relief requested by the Commission in its motion.

**III.    GA Investors Committed Securities Fraud.**

GA Investors is an entity that fraudulently offered securities through dozens of websites, including GA-Investors.org. Compl., ¶¶1, 11 (Doc No. 1).[2] In so doing, GA Investors impersonated and used the identifying information of various legitimate companies, including names, addresses, website content, and stock trading information. ¶¶11, 15. GA Investors directly communicated with investors, using instant messaging platforms on various social media sites and smartphone applications, under the identity Brian K. Stafford, a purported stakeholder in the company who had recently been hired as its Chief Operating Officer. ¶¶12, 22-23. There was no Stafford, however; GA Investors merely fashioned an alias figurehead, creating a fictitious biography and using photographs misappropriated from a real person's social media site. ¶24. From approximately October 2022 to January 2023, GA Investors used the Stafford persona to deceive investors across the world, including in the United States, to invest approximately $85,000 in fraudulent securities offerings on the now-defunct GA-

---

[2] Complaint citations subsequently appear as "¶___."

Investors.org website. ¶¶14, 24-29.

GA Investors violated Section 10(b) of the Exchange Act and Rule 10b-5. These provisions prohibit any person or entity, in connection with the purchase or sale of a security, from, directly or indirectly: (1) employing devices, schemes, or artifices to defraud; (b) making untrue statements of material fact or omitting to state material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices, or courses of business which operate as a fraud or deceit upon certain persons, in connection with the purchase or sale of a security. *See* 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5. Section 17(a) of the Securities Act contains similar prohibitions in the offer or sale of any security.[3] *See* 15 U.S.C. § 77q(a).

The language of these provisions is "expansive" and they "capture a wide range of conduct." *Lorenzo v. SEC*, 139 S. Ct. 1094, 1101 (2019). *Lorenzo* defined "device," as something "devised, or formed by design," defined a scheme as a "project, plan or program of something to be done," and defined an artifice as "an artful stratagem or trick." *Id.* (cleaned up). The Court defined "act" and "practice" broadly to include things done, actions and deeds. *Id.* For violations of Exchange Act Section 10(b) and Rule 10b-5, and Securities Act Section 17(a)(1), the Commission must show that a defendant acted with scienter, but negligence is sufficient for liability under Securities Act Sections 17(a)(2) and (3). *See Aaron v. SEC*, 446 U.S. 680, 687 n.5, 695-97 (1980); *Aldridge v. A.T. Cross Corp.*, 284 F.3d 72, 82 (1st Cir. 2002) (scienter may be established by a showing of recklessness). Direct evidence of scienter is unnecessary; rather, "proof of scienter required in fraud cases is often a matter of inference from circumstantial evidence." *Herman & MacLean v. Huddleston*, 459 U.S. 375, 390 n.30 (1983).

---

[3] Securities Act Section 17(a)(2) also requires that the defendant obtain money or property through its untrue statements. *See* 15 U.S.C. § 77q(a)(2).

5

In its scheme to deceive investors, GA Investors made materially false and misleading statements and fraudulent omissions about the company's existence and operations, and it falsely guaranteed profits and claimed that investments were insured. ¶17.[4] GA Investors' misrepresentations and omissions included the following:

a. Its "District Office" is located at 6025 Metcalf Lane, Overland Park, Kansas 66202. In fact, a registered broker-dealer with a similar name—which has no affiliation with GA Investors or GA-Investors.org—is located at that address. ¶15(a).

b. Its "Corporate Headquarters" is located in the "GA Investors Tower" at 301 E. Fourth St., Cincinnati, Ohio 45202. In fact, an insurance company with a similar name—which has no affiliation with GA Investors or GA-Investors.org—is located at that address. ¶15(b);

c. GA Investors claimed as its own certain stock trading data on both the London Stock Exchange and Johannesburg Stock Exchange. In fact, the stock trading data on GA-Investors.org belongs to a publicly-traded company which has no affiliation with GA Investors or GA-Investors.org. ¶15(c);

d. Investments in "Unit Trusts" guaranteed daily returns ranging from 2% to 4.5% and profits can be withdrawn at any time. ¶17;

e. GA Investors displayed to its investors on their private account pages purported accumulated profits on investments, when no such profits existed. When investors sought to recoup large portions of their investment, GA Investors concocted excuses for why the funds could not be withdrawn and then froze those accounts. ¶20;

f. Using the Stafford alias, GA Investors falsely claimed:

1. "[Y]ou won't lose money it works just like your bank." ¶24(a);

2. GA Investors is "a blockchain leading company and an Insurance Company meaning that your account and investments are insured, it's endorsed by Elon musk [sic] and Peter Smith and Insured by the FDIC." ¶24(b);

3. To receive a profit, "you have to purchase the [crypto] coins and store them in your wallet so what GA does is to help you invest them, by purchasing more crypto mining equipments [sic] and machines to speed up their

---

[4] By communicating with investors on various internet websites, social media sites, and smartphone applications, GA Investors used the mails and/or the means or instruments of transportation or communication in interstate commerce. *See, e.g.*, *U.S. v. Lewis*, 554 F. 3d 208, 215 (1st Cir. 2009); *see also American Library Ass'n v. Pataki*, 969 F. Supp. 160, 161 (S.D.N.Y. 1997).

6

> mining…and you receive returns daily." ¶24(c); and
>
> 4. "[C]rypto mining" with GA Investors will "earn profits daily;" "with mining you earn profits everyday;" and that after depositing money "to your GA wallet . . . your account would automatically start generating daily ROIs [returns on investment]." ¶24(d).

These misrepresentations and omissions were material to investors and prospective investors, inducing them to invest in GA Investors and purchase the securities it offered. *See* ¶26.

Violations of Securities Act Section 17(a)(2) also require the defendant to have obtained money through its misrepresentations and omissions. GA investors obtained about $70,000 in proceeds from its sales of securities to five investors. ¶¶14, 24-29; Declaration of Commission Accountant John McCann ("McCann Dec."), ¶5. These sales were induced and facilitated by GA Investors' lies to victims. *See* ¶26.

GA Investors' scienter is established by its blatant scheme to fabricate the legitimacy of the company and its personnel, and to guarantee the profit and safety of its securities offerings. *See SEC v. Esposito*, 260 F. Supp. 3d 79, 91 (D. Mass. 2017) (defendant acted with scienter in conducting brazen scheme); *SEC v. Johnston*, 986 F.3d 63, 74 (1st Cir. 2021) (quoting *Aldridge v. A.T. Cross Corp.*, 284 F.3d 72, 83 (1st Cir. 2002)) ("classic evidence of scienter" where defendant knew facts suggesting his published statements were inaccurate or misleadingly complete); *SEC v. Enterprises Solutions, Inc.,* 142 F. Supp. 2d 561, 577 (S.D.N.Y. 2001) (false statements on website were made with high degree of scienter).

In conclusion, the conceded and well-pleaded allegations establish GA Investors' violations of the First and Second Claims of the Complaint (Section 10b of the Exchange Act and Rule 10b-5, and Section 17(a) of the Securities Act).

**IV.    The Court Should Enter the Proposed Final Judgment Against GA Investors.**

The Commission asks this Court to enter a final judgment that permanently enjoins GA

investors from further violations of Exchange Act Section 10(b) [15 U.S.C. § 78(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5], and Securities Act Section 17(a) [15 U.S.C. § 77q(a)]; a conduct-based injunction prohibiting GA Investors from participating in any securities offerings to investors; and an order to pay a civil monetary penalty of $1,116,140, disgorgement of $70,058, and prejudgment interest of $5,740. The Commission has filed a proposed final judgment with this motion. These remedies are appropriate under the securities laws and are warranted by GA investors' conduct.

*Injunctive Relief.* Section 20(b) of the Securities Act and Section 21(d) of the Exchange Act authorize the Commission to bring an action in district court to enjoin individuals or entities from engaging in acts or practices violating any provision of the Securities Act and Exchange Act, respectively. Injunctive relief is warranted when there is a reasonable likelihood that a defendant will engage in future violations of the law. *See SEC v. Sargent*, 329 F.3d 34, 39 (1st Cir. 2003). To make this determination, a court considers "whether a defendant's violation was isolated or part of a pattern, whether the violation was flagrant and deliberate or merely technical in nature, and whether the defendant's business will present opportunities to violate the law in the future." *SEC v Druffner*, 517 F. Supp. 2d 502, 513 (D. Mass. 2007) (quoting *SEC v. Bilzerian*, 29 F.3d 689, 695 (D.C. Cir. 1994)), *aff'd sub nom. SEC v. Ficken*, 546 F.3d 45 (1st Cir. 2008).

As detailed above, and as conceded in default, GA investors engaged in a brazen scheme to fraudulently sell securities. This conduct involved lying to investors and potential investors by falsely impersonating legitimate companies, acting through an alias, and promising exorbitant and riskless (but in reality fake) profits. These lies, and the resulting deceitful procurement of investor funds, were "flagrant and deliberate." GA Investors acted with scienter, having at all times full knowledge of the falsity and misleading nature of its misrepresentations

8

and omissions. GA Investors will be able to continue to violate the securities laws as evidenced by the fact that after several of its websites fraudulently offering securities were initially removed from the Internet as ordered by the TRO, the Commission learned of dozens of other websites that were actively offering securities to the public. Injunctive relief is therefore warranted to combat the proliferation of GA Investors' fraudulent securities offerings on the Internet. *See* Doc Nos. 18-22, 27-29, 33-35.

*Conduct-Based Injunction*. The Court has the authority to order a "conduct-based" injunction under Sections 21(d)(1) and (5) of the Exchange Act:

> **Injunction Proceedings…**Whenever it shall appear to the Commission that any person is engaged or is about to engage in acts or practices constituting a violation of any provision of this chapter [or] the rules or regulations thereunder… it may bring an action in the proper district court …to enjoin such acts or practices…

15 U.S.C. § 78(u)(d)(1).

> **Equitable Relief--** In any action or proceeding brought or instituted by the Commission under any provision of the securities laws, the Commission may seek, and a Federal court may grant, any equitable relief that may be appropriate or necessary for the benefit of investors.

15 U.S.C. § 78u(d)(5).[5] Consequently, the Court has the authority to enjoin GA Investors from engaging in conduct such as participating in securities offerings. Here, the Commission seeks an injunction that prohibits GA Investors from, directly or indirectly, including, but not limited to, through any entity owned or controlled by GA Investors, participating in the purchase, offer or sale of any security to investors or potential investors, provided, however, that such injunction shall not prevent GA Investors from purchasing or selling securities listed on a national securities exchange for its own personal account. Compl., Prayer for Relief, § D.

---

[5] Exchange Act Section 21(d)(5) provides that such equitable relief is applicable to cases brought under any provision of the "securities laws," which includes the Securities Act. *See* 15 U.S.C. § 78c(a)(47) (defining "securities laws" to include the Securities Act). Thus, a court may order a conduct-based injunction on violations of Section 17(a) of the Securities Act.

Similar injunctive language has been issued in other cases in this District, including by this Session of the Court. *See SEC v. Carnovale, et al.*, No. 21-cv-11938-MJJ (D. Mass. Jan. 2, 2024) (Doc No. 45, ¶V) ("Defendant is permanently restrained and enjoined from directly or indirectly, including, but not limited to, through any entity owned or controlled by him, participating in the issuance, purchase, offer, or sale of any security, provided, however, that such injunction shall not prevent Defendant from purchasing or selling securities listed on a national securities exchange for his own personal account.").[6]

**Civil Penalty.** Section 20(d) of the Securities Act and Section 21(d) of the Exchange Act authorize the Commission to seek civil penalties against any person when, upon a proper showing, such person has violated the respective acts. The imposition of a civil penalty furthers "the dual goals of punishment of the individual violator and deterrence of future violations." *Official Committee of Unsecured Creditors of WorldCom, Inc. v. SEC*, 467 F.3d 73, 81 (2d Cir. 2006) (citation omitted); *see SEC v. Happ*, 392 F.3d. 12, 32 (1st Cir. 2004). Many of the same factors analyzed when determining whether to impose an injunction also apply in determining the appropriate civil penalty. Courts consider various factors, "including the egregiousness of the violation, the defendant's willingness or failure to admit wrongdoing, the isolated or repeated nature of the violations, the degree of scienter involved, the defendant's cooperation with authorities or lack thereof, and the defendant's current financial condition." *SEC v. Esposito*, No. 16-cv-10960-ADB, 2018 WL 2012688 *1, *9 (D. Mass. Apr. 30, 2018) (internal citations omitted). Many of those factors are discussed above.

The Court should impose a statutory third-tier civil penalty against GA Investors in the

---

[6] Other instances where the Commission has sought and received similar conduct-based injunctions in this District include: *SEC v. Feloni et al.*, No. 23-cv-12233-JEK (D. Mass.) (Final Judgment entered 2/8/24, Doc No. 11, ¶IV); *SEC v. Sharp et al.*, No. 21-cv-11276-WGY (D. Mass.) (Final Judgments entered 6/14/23 and 6/21/23, Doc Nos. 317 and 325, ¶IV).

10

amount of $1,116,140. Exchange Act Section 21(d)(3)(B)(iii) [15 U.S.C. § 78u(d)(3)(B)(iii)] and Securities Act Section 20(d)(2)(C) [15 U.S.C. § 77t(d)(2)(C)] authorize the Court to impose a third-tier penalty when the violation involved "fraud, deceit, manipulative, or deliberate or reckless disregard for a regulatory requirement" that "resulted in substantial losses or created a significant risk of substantial losses to other persons." Here, GA Investors' deliberate fraud—soliciting investors through dozens of websites containing material misrepresentations—created a significant risk of substantial losses to investors. GA Investors, in turn, reaped significant illicit gains from its fraud.

The Acts set the maximum amount per violation for a third-tier penalty as the greater of (a) the gross amount of any pecuniary gain to such defendant; or (b) a specified dollar amount during the relevant period. Here the Commission has requested the statutorily specified amount, adjusted for inflation, of $1,116,140.[7] The Commission believes this amount is appropriate and strikes the right balance in light of the damage GA Investors caused, the egregious conduct it exhibited, and the need for deterrence. Because GA investors has refused to appear in this case, there is no means to assess its financial condition, so it should not benefit from any question regarding an ability to pay.

**Disgorgement.** Section 21(d)(7) of the Exchange Act [15 U.S.C. § 78u(d)(7)] states that in "any action or proceeding brought by the Commission under any provision of the securities laws, the Commission may seek, and any Federal court may order, disgorgement." The purpose of disgorgement is "to prevent unjust enrichment." *See e.g.*, *Druffner*, 517 F. Supp. 2d at 511. In

---

[7] Though the statutes contain lower penalty amounts for each of the tiers, these amounts were increased for violations occurring after November 2, 2015, to account for inflation. *See* 17 C.F.R. § 201.1001(b); Inflation Adjustments to the Civil Monetary Penalties Administered by the Securities and Exchange Commission (as of Jan. 15, 2024), *available at* https://www.sec.gov/enforce/civil-penalties-inflation-adjustments. Under the three-tier penalty scheme, the maximum first-tier penalty for an entity is $115,231 per violation, and the maximum second-tier penalty for an entity that engaged in "fraud, deceit, manipulation or deliberate or reckless disregard of a regulatory requirement" is $576,158 per violation.

*Liu v. SEC*, 140 S. Ct. 1936, 1940 (2020), the Supreme Court held that "a disgorgement award that does not exceed a wrongdoer's net profits and is awarded for victims is equitable relief permissible under [15 U.S.C.] § 78u(d)(5) [Section 21(d)(5) of the Exchange Act]." The amount of disgorgement ordered "need only be a reasonable approximation of profits causally connected to the violation," and the "risk of uncertainty in calculating disgorgement should fall on the wrongdoer whose illegal conduct created that uncertainty." *Happ*, 392 F.3d at 31 (internal citations omitted); *SEC v. Navellier & Assocs, Inc.,* No. 17-cv-11633-DJC, 2021 WL 5072975, *1-2 (D. Mass. Sept. 19, 2021) (applying this standard after *Liu*).

GA Investors should be ordered to pay disgorgement of $70,058, which is the amount of profits GA Investors received from its violations. *See* McCann Decl, ¶5. If the Commission can collect sufficient disgorgement from GA Investors, it intends to distribute those funds to the harmed investors.

**Prejudgment Interest.** A district court has "broad discretion" to order a defendant to pay prejudgment interest on the disgorgement amount. *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1476 (2d Cir. 1996). "Courts have recognized that an assessment of prejudgment interest, like the disgorgement remedy, is intended to deprive wrongdoers of profits they illegally obtained by violating the securities laws." *Sargent*, 329 F.3d at 40 (citation omitted). Without an award of prejudgment interest, a securities law violator receives an "interest-free loan" on his unjust enrichment. *Id*. at 41. In SEC cases, courts typically calculate prejudgment interest using the rate established by the Internal Revenue Service for tax underpayment, which reasonably approximates the unjust benefit of a defendant's use of the money. *See First Jersey*, 101 F.3d at 1476; *Druffner*, 517 F. Supp. 2d at 512-13. The Commission asks the Court to order $5,740 in prejudgment interest, representing the amount of interest accrued on the requested disgorgement of $70,058. *See* McCann Decl., ¶7.

**CONCLUSION**

For these reasons, the Commission asks this Court to enter default judgment against Defendant GA Investors, in the form of the final judgment submitted with this Motion.

Respectfully submitted,

SECURITIES AND EXCHANGE COMMISSION

By its attorneys,

/s/ *David H. London*
David H. London (Mass. Bar No. 638289)
Kerry Dakin (Mass. Bar No. 640826)
Russell A. Mawn, Jr. (Mass. Bar No. 712095)
Sean J. Fishkind (Mass. Bar No. 707172)
Boston Regional Office
33 Arch Street, 24th Floor
Boston, MA 02110
(617) 573-8997 (London direct)
LondonD@sec.gov (London email)

Dated: February 29, 2024

**CERTIFICATE OF SERVICE**

I hereby certify that on February 29, 2024, a true and correct copy of this document was filed through the Court's CM/ECF system, and accordingly, the document will be sent electronically to all participants registered to receive electronic notice in this case. Copies of this document will be sent by email to the Defendant at the several email addresses identified on the public docket at Doc No. 14.

/s/ *David H. London*
David H. London